IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 1:25CR00007-001 |
|     Plaintiff,<br>vs. | JUDGE DLOTT |
| HAYDEN WOLFORD | <u>SENTENCING MEMORANDUM</u> |
|     Defendant. | |

---

Now comes the Defendant, **HAYDEN WOLFORD,** through his attorney, **BRANDON MOERMOND,** and hereby respectfully submits the following sentencing memorandum behalf of Mr. Wolford.

    A Memorandum in Support is attached.

Respectfully submitted,

*/S/ Brandon A. Moermond*

**BRANDON A. MOERMOND of
MOERMOND & MULLIGAN**
**Supreme Ct. #0092397**
615 Main Street, 3rd Floor
Cincinnati, Ohio 45202
(513) 421-9790
(513) 421-0206 fax
bmoermond@mmdefense.law

# MEMORANDUM IN SUPPORT

## MAY IT PLEASE THE COURT:

Hayden Wolford is a thirty-three (33) year old man. He is divorced and does not have any children. He was raised by his parents, Edith Miller and Denver Wolford, in Jackson, Ohio with his two older sisters. Hayden grew up in the country and describes his early childhood as "good" although he recalls his parents often getting into heated arguments. He was the youngest child of three, his two sisters being seven and nine years older than him. He stated that his eldest sister served as a mother figure to him after his parents' divorce around the age of eleven.

Growing up in the country, Hayden did not have many friends nearby. His family lived on a few acres with a pond. Hayden shared that this did not bother him much until his parents divorced. Initially, Hayden's parents shared custody of him but continually fought over parenting time. Hayden and his father continued to live in an isolated area, and Hayden would visit his mother who lived forty minutes away. By the time Hayden's parents divorced, his older sisters were already young adults. He was often left home alone for days at a time between the ages of thirteen and seventeen, while his father visited girlfriends. Hayden struggled emotionally while trying to navigate his teenage years dealing with the trauma from his parents' divorce.

Hayden reported that around the age of eight, he was abused by a neighbor who forced him to digitally penetrate her. He was in the second grade at the time. Hayden was also exposed to Playboy magazines at a friend's house around the same time. When Hayden was around the age of ten, he began searching for pornographic images on the computer. Hayden stated that his viewing of pornographic images became a coping mechanism to deal with the anger that came from his parents' divorce. Hayden's addiction to pornography later became a

problem throughout his relationship and short marriage. His addiction only became worse after his marriage ended.

After many years of schooling, Hayden graduated with a Doctorate of Podiatric Medicine. Hayden was working as a Podiatrist at Adams County Regional Medical Center at the time that a search warrant was executed on his home. Agents spoke with Hayden at his place of employment while they executed the search on August 23, 2023. Hayden lost his job that day due to this offense. Hayden has now voluntarily relinquished his medical license. Since then, Hayden has struggled to keep a job due to the nature of the case. He is currently employed with AWP Safety making $14.00 an hour. Hayden's college loans are over $500,000. He previously owned his home in Hillsboro; however, it is currently in foreclosure. He has been dealing with the significant consequences of his actions ever since.

As a result of the charges in this case, Hayden realized he had a problem with pornography and began attending mental health counseling on his own accord. He meets with a mental health counselor weekly and is actively working on learning healthy coping skills. Hayden has not viewed pornography since November 2023.

Hayden was charged on January 16, 2025, with Possession/Access with Intent to View Child Pornography, a violation of 18 U.S.C. § § 2252(a)(4)(B) and (b)(2). On February 20, 2025, he pled guilty to the charges. He was granted an own recognizance bond with pretrial supervision and has complied and cooperated thus far in his case. The United States Sentencing Guidelines, properly applied, call for an imprisonment range of one hundred and twenty-one (121) to one hundred and fifty-one (151) months, however the Statutory Provisions allow for a maximum of one hundred twenty (120) months with a period of supervised release not to exceed five years. There are no requests for restitution at this time. It is undersigned counsel's belief that Hayden would benefit from a sentence of time served

and a period of supervised release. Hayden is benefitting from counseling and because he immediately took action upon being charged, he realizes the significance of his actions, the effect it has on his victims and the personal cost associated with this offense. In simple terms, Hayden has lost everything he ever worked for and now owes half a million dollars in student loan debt.

The Sixth Circuit treats "downward departure" and "sentencing variance" as distinct concepts. *See United States v. Grams,* 566 F.3d 683, 687 (6th Cir. 2009) ("While the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance, the concepts are distinct."). A court can depart downward "when there is a mitigating factor that has not been adequately considered in formulating the Sentencing Guidelines." *United States v. Coleman,* 188 F.3d 354, 358 (6th Cir. 1999). Cases that are "unusual" or not in the "typical 'heartland' of cases embodied by the Guidelines" may warrant a downward departure. *Id.,* citing *Koon v. United States,* 518 U.S. 81, 93-94 (1996). In addition to the authority to depart downward from the guidelines range in unusual cases, a court has discretion to vary from the guidelines range based on the factors enumerated in 18 U.S.C. § 3553(a). *Grams.* In the instant case, the analyses of these distinct concepts overlap.

Mr. Wolford has pled guilty. He came forward immediately and has taken full responsibility for his actions. He has cooperated fully. Mr. Wolford has no criminal history and has been taking the steps to better himself since he was first charged. He has voluntarily relinquished his medical license. He has made significant strides to address all of the behavior that led him here today. There are no indications that Mr. Wolford would offend again. Mr. Wolford has complied with all requests from the court thus far, as well as seeking treatment outside the courts request.

While a prison sentence would ensure that a crime would not occur in the immediate

future, it would do little to address the underlying behavior that caused Mr. Wolford to commit this crime. Mr. Wolford would be better served by a downward departure from the sentencing guidelines allowing for time served and a period of supervised release. Mr. Wolford is benefitting from mental health counseling, he has obtained coping skills to deal with the anger he held for so long, he is continually working to better himself and put himself in a better position for the future.

For the foregoing reasons, Mr. Wolford respectfully requests that this Court exercise its discretion to depart downward and/or vary from the statutory guidelines and sentence Mr. Wolford to time served with a period of supervised release.

Respectfully submitted,

/S/ Brandon A. Moermond

**BRANDON A. MOERMOND of MOERMOND & MULLIGAN Supreme Ct. #0092397**
615 Main Street, 3rd Floor
Cincinnati, Ohio 45202
(513) 421-9790
(513) 421-0206 fax
bmoermond@mmdefense.law

### Certificate of Service

I hereby certify that a copy of the foregoing was delivered to the U.S. Attorney's office on the same day as filing via electronic filing.

/S/ Brandon A. Moermond
BRANDON A. MOEMROND
Attorney for Defendant

**David H. Roush, Psy.D. & Associates, LLC**
National Centre
2378 National Road
Fairborn, Ohio 45324
(937) 879-7996

May 19, 2025

Ms. Amy Pond
Moermond & Mulligan, LLC
615 Main Street-3rd Floor
Cincinnatti, Ohio 45202

RE: Hayden Wolford

Ms. Pond.

I am writing at the request of Hayden Wolford to provide you with an update on his treatment progress. As previously mentioned, Mr. Wolford began his involvement with the outpatient sex offender treatment program provided by my practice on December 12, 2024. He has attended all of the required weekly group therapy sessions since this date. Although he has been absent on 2 occasions due to illness and another 2 occasions due to inclement weather creating poor road conditions. He has attended a total of 55 sessions thus far.

Mr. Wolford is very active in sessions, providing appropriate and helpful feedback and query to the members of his cohort. He demonstrates insight and understanding of his own inappropriate behaviors and has expressed a desire to better understand the etiology of these behaviors. This understanding will enable him to develop intervention strategies to assist in thwarting recidivism. He is expected to continue in the treatment group which has approximately 24 more months remain before completion. It should be noted that Mr. Wolford sought out services on a voluntary basis and his involvement with this treatment program is also voluntary. This suggests a commitment to his treatment and his desire to arrest the inappropriate behavior. Further, it should also be noted that Mr. Has a round-trip commute to this treatment program of approximately 3 hours. This also suggests a significant commitment to treatment.

David H. Roush, PsyD., C.C.F.C., C.S.O.T.S., C.S.A.S., C.C.T.P.
Clinical Psychologist
License #5807
Clinically Certified Forensic Counselor #F16738
Certified Sexual Offender Treatment Specialist
Clinically Certified Sex Addiction Specialist
Certified Clinical Trauma Professional

Your Honor,

I am writing this letter as the sister of Hayden Wolford to provide my perspective on his character and to tell the court the kind of person I've known him to be. I understand the seriousness of the charges against him and only hope to show that Hayden has shown genuine remorse to me for what he's done and that I do believe that there's hope for his future.

This situation has been devastating for our entire family and I know it has profoundly affected Hayden. He has been going to his counselors and having hard conversations with my parents as part of the work he's putting in to be certain he never repeats his mistakes. He has expressed sadness and shame over his actions and acknowledged the hurt he has caused others and our family. Because I do feel he is truly repentant I also feel that he has the potential to move forward with a better life and contribute positively to society moving forward.

I have seen Hayden rescue kittens and nurse them around the clock until they were strong enough to go to good homes. When I needed help saving an abandoned baby raccoon he was the first person I called and he came to pick it up and helped keep it alive until a rescue was able to take it in the next day. He has checked in on elderly neighbors and still visited them for years after he moved away because he wanted them to know they weren't forgotten.

Your Honor, I respectfully ask for your compassion in considering Hayden's sentence. While he has made mistakes, I believe that he understands the weight of them and that he has good things to offer the world when his sentence is over.

Thank you for taking the time to read my letter and consider my words.

Sincerely,
Sabrina Laycock